IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MBANK, INC, fka THE MERCHANT'S
BANK, dba MBANK, a domestic
business corporation,

                          Plaintiff,                    03:10-cv-01276-AC

            v.                                          OPINION AND ORDER

STATE FARM FIRE AND CASUALTY
COMPANY, a foreign business
corporation,

                          Defendant.
_____

ACOSTA, Magistrate Judge:

*Pending Motions*

        MBank, Inc., dba MBank ("MBank"),  filed a Complaint in the Circuit Court of the State of

Oregon for the County of Multnomah alleging breach of contract and unjust enrichment against

State Farm Fire and Casualty Company ("State Farm").  The two state law claims in MBank's

1 – OPINION AND ORDER

Complaint arise from State Farm's decision to deny coverage, under a Rental Dwelling Policy ("Policy"), for water damage to Lot 25, CLIFFS, City of Redmond, Deschutes County, Oregon, and otherwise known as 1911 NW 18th Street, Lot 25, Redmond, Oregon 97756 ("Lot 25"). Pursuant to 28 U.S.C. § 1441, State Farm removed MBank's Complaint to this court based upon diversity of citizenship. 28 U.S.C. § 1332. MBank subsequently filed an Amended Complaint to attach a copy of the Policy as Exhibit 1.

Pursuant to Fed. R. Civ. P 56(a), both parties move the court to enter partial judgment in their favor. There is no dispute as to the facts in this case and the parties agree on the sole legal question before the court: is MBank entitled to recover Policy benefits from State Farm for a water damage loss after MBank accepted the property back from the owner in full satisfaction of MBank's security interest in the property? Oral argument was heard and for the reasons that follow, MBank's request for partial summary judgment is denied and State Farm's request for an entry of partial summary judgment is granted.

*Factual Background*

MBank is a domestic business corporation duly registered with the State of Oregon and authorized to do business therein. (Stipulation ¶ 1.) State Farm is a foreign business corporation with its principal place of business located in Bloomington, Illinois. State Farm is duly authorized to perform business in the State of Oregon. (Stipulation ¶ 2.) Non-party, J.T. Walker Construction, Incorporation ("JTW") is a domestic business corporation duly authorized to perform business in the State of Oregon. JTW was previously organized as a limited liability company in the State of Oregon. JTW is a construction company. (Stipulation ¶ 3.)

2 – OPINION AND ORDER

In about 2005, MBank made a construction loan to JTW.  The loan was made for the purchase of land and construction of an improvement located at Lot 25.  (Stipulation ¶ 4.)  JTW insured Lot 25 with State Farm pursuant to a rental dwelling policy (Policy No. 97-BB-G037-1). (Stipulation ¶ 5.)

The Policy provides, in part:

SECTION I – CONDITIONS

1.  Insurable Interest and Limit of Liability.  Even if more than one person has an insurable interest in the property covered, we shall not be liable:

a.  to the **insured** for an amount greater than the insured's interest[.]
. . . . .

12.  Mortgage Clause. The word "mortgagee" includes trustee.

a.  If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear. . . .

(Stipulation Ex. A 13, 15 (emphasis in original).)

On or about January 15, 2009, Lot 25 sustained water damage.  (Stipulation ¶ 6.)  JTW reported the damage to State Farm, and State Farm opened a claim under Claim No. 37 -1148-6541. (Stipulation ¶ 7.)

In May 2008, MBank delivered to JTW a Notice of Default and Demand, demanding payment of the entire balance due on the construction loan.  Thereafter,  JTW and MBank  entered into a Settlement Agreement ("Agreement") dated April 10, 2009.  (Stipulation ¶ 8.)

The Agreement provides, in part, at paragraph 25:

[S]ubject to receipt of the Payment, the fully executed Estoppel Deeds and the Bargain and Sale Deed . . . MBank . . . does hereby release, acquit, and forever discharge Walker, Inc. . . . from any and all claims, matters, liabilities or obligations of any kind or nature, known or unknown which may be asserted by MBank against Walker, Inc. . . . including but not limited to the obligations or duties arising under

3 – OPINION AND ORDER

the Construction Loans, the Notes, the Trust Deeds, and the other loan documents and transaction(s) referenced or evidenced thereby. . . .

(Stipulation Ex. B at ¶ 25.)

Pursuant to the Agreement, JTW executed an Estoppel Deed - No Merger ("Deed") on April 10, 2009, which conveyed Lot 25 and the improvement located thereon to MBank. (Stipulation ¶ 9.) At the time JTW executed the Deed, the water damage at Lot 25 still existed and the claim was pending with State Farm. (Stipulation ¶ 10.)

The Deed provides, in part:

The true consideration for the execution and delivery hereof is $0, however, the entirety of the consideration for this deed is other property in the form of the undertakings described below.

Grantor covenants that:

This is a deed ABSOLUTE IN EFFECT and conveys unto the Grantee the fee simple title of the property above described and all rights, direct or indirect therein and/or related to the property . . . .

. . . .

Grantor herewith waives, surrenders, relinquishes and conveys and relinquishes any equity of redemption and all statutory rights of redemption and all other rights of redemption, direct or indirect, concerning the property and the said Grantee's mortgage.

. . . .

GRANTOR UNDERSTANDS THIS IS A FULL AND FINAL CONVEYANCE OF AND RELEASE OF ALL GRANTOR'S INTEREST, DIRECT OR INDIRECT, IN THE DESCRIBED PROPERTY.

Both parties agree that:

This deed does not effect a merger of the fee ownership and the lien of any of the mortgages, trust deeds or other rights in the property described herein. The fee and the said liens and other Grantee's rights shall hereafter remain separate and distinct for all purposes.

4 – OPINION AND ORDER

. . . .

The current debt secured by the said mortgage or deed of trust equals or exceeds the fair present value of the property.

<u>Grantee covenants that</u>:

By acceptance of this deed, Grantee shall forever forebear taking any action to collect any deficiency against Grantor personally for any sums described in the promissory note given to secure the mortgage/trust deed above described, other than by foreclosure of that security instrument, and that in any proceeding to foreclose that security instrument, Grantee shall not obtain a deficiency judgment against Grantor for the debt evidenced by the said promissory notes, such deficiency rights in any such foreclosure proceeding being hereby waived. This forebearance does not affect the responsibility of the Grantor for the water damage to the property predating this Estoppel Deed.

(Stipulation Ex. C at 1-2 (emphasis in original).)

On or about June 8, 2009, State Farm issued a draft in the sum of $51,245.15 to cover the water damage to Lot 25. MBank and JTW later returned these funds to State Farm. (Stipulation ¶ 11.) The water damage to Lot 25 totals not less than $51,245.15, and not more than $143,224.00. (Stipulation ¶ 12.)

Counsel for MBank, Warner E. Allen, filed a sworn declaration stating that when the Agreement and Deed were signed on April 10, 2009, neither MBank nor JTW were aware of certain water damage that occurred to the house located on Lot 25. (Warner E. Allen Revised Declaration ("Allen Decl.") ¶ 4, Aug. 19, 2011.) Rather, MBank and JTW "became aware of the water damage" around the week of April 23, 2009, and a report and a claim were then filed with State Farm. (Allen Decl. ¶ 4.) Although, initially, the claim was accepted by State Farm, in August 2009, State Farm denied MBank's claim for water damage because JTW's "tender of the property to MBank," relieved State Farm of its duty to pay under the Policy. (Pl.'s Am. Compl. ¶ 14.)

5 – OPINION AND ORDER

Following State Farm's denial of the claim, MBank and JTW met and agreed

the parties would never had included Lot 25 in the settlement agreement or executed the Estoppel Deed had they known about the damage but rather would have either required JTW to complete repairs to the house prior to Plaintiff accepting an Estoppel Deed or would have required a complete assignment of the claim against Defendant State Farm.

(Allen Decl. ¶ 6.)  Accordingly, MBank and JTW decided to amend the Deed and "clarify the

inten[t] of the parties at the time the Agreement was reached."  (Allen Decl. ¶ 7.)  An Addendum

to the Agreement (Stipulation Ex. B at 9) was executed, and the following language was added to

Deed:  "[t]his forbearance does not affect the responsibility of grantor for water damage to the

property predating this Estoppel Deed."[1]  (Allen Decl. ¶ 7.)

Allen asserts the purpose of the Addendum to the Agreement and the revised language in the

Deed "was to memorialize the acknowledgment of JTW and [MBank] of how they would have

proceeded had either been aware of the water damage at the time they entered into the settlement

agreement and recorded the Estoppel Deed with respect to Lot 25."[2]  (Allen Decl. ¶ 8.)


After repairing Lot 25, MBank subsequently sold the property to Jeff and Melissa Newberry.

_____

[1]Allen's declaration further states:  "This deed, now with the clarifying language, was re-recorded on June 2, 2010.  A copy of this deed is attached and incorporated herein as Exhibit B." The court was unable to locate "Exhibit B" in the record, *i.e.*, a complete copy of the Deed that was re-recorded in June 2010.  It appears, however, that page two of that re-recorded deed was inserted into (and replaced page two) of the original Deed recorded in April 2009.  (Stipulation Ex. C at 2.)

[2]Allen's assertion the parties were unaware of the water damage prior to executing the Agreement and Deed on April 10, 2009, is puzzling in light of the parties' stipulation the water damage occurred in January 2009, and a claim was opened with State Farm at that time.  In addition, the document titled "Addendum to Settlement Agreement" and signed by JTW, states: "Prior to the Settlement Agreement, J.T. Walker Construction, Inc.[,] had become aware of the water damage and had initiated repairs and its insurance claim."  (Stipulation Ex. B at 9.)

(Stipulation ¶ 13.)

*Legal Standard*

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All material facts are resolved in a light most favorable to the nonmoving party. *Id*. at 331. The court must accept all evidence and make all inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).

*Discussion*

The sole issue for the court is whether MBank, the holder of a secured interest in Lot 25, is entitled to recover benefits under the State Farm Policy issued to JTW for a water loss that occurred to that property. Both parties seek an entry of judgment as a matter of law on this question. Specifically, MBank asks the court to establish State Farm's "liability for the water damage . . . and require[] it to pay in accordance with the terms of the [P]olicy to the full extent of the loss." (Pl.'s Mot. Partial Summ. J. 2.) MBank contends it did not "extinguish[] its insurable interest" in Lot 25. (Pl.'s Mem. Partial Summ. J. 4.) According to MBank, its lien on Lot 25 "did not merge into the title" when it took possession of the property and that lien remains as a separate, insurable interest. (Pl.'s Mem. Partial Summ. J. 4.) In addition, MBank argues it suffered an "actual loss" by accepting the Agreement and Deed because the property is worth less than the full amount of the debt. MBank argues that loss, *i.e.*, the difference between the property and the debt amount, constitutes an

7 – OPINION AND ORDER

insurable interest.  (Pl.'s Mem. Summ. J. 11.)

Conversely, State Farm seeks a declaration that MBank "is not entitled to recover any [P]olicy benefits" because it accepted the property back from JTW "in full satisfaction of MBank's security interest in the property."  (Def.'s Mot. Partial Summ. J. 2.)  State Farm contends MBank's insurable interest in Lot 25 was extinguished by acceptance of the Deed.  Specifically, State Farm maintains that, under the terms of the Agreement and Deed, JTW's "loan related liability to [MBank] was fully discharged, and [MBank] accepted the property in full satisfaction of the debt." (Def.'s Resp. Supplemental Mem. 2.)  According to State Farm, the law is clear that "those events discharged [MBank's] insurable interest in the property and eliminated its right to recover under the [P]olicy."  (Def.'s Resp. Supplemental Mem. 2.)

The parties agree that Oregon law controls the outcome of the decision here, but there is not an Oregon case on point.  Thus, both sides rely on cases from other jurisdictions in support of their contentions in this case.  While the court agrees there is no Oregon case on point, the Oregon Supreme Court's decision in *Haskin v. Greene*, 205 Or. 140, 286 P.2d 128 (1955), provides an initial framework.  In *Haskin*, the Oregon Supreme Court recognized that when the mortgagee purchases property and extinguishes the mortgage debt, the mortgagee is not entitled to insurance proceeds under a standard mortgage loss-payable clause.  *Id*. at 149.  The Oregon Court explained "as a result of the foreclosure proceedings and the purchase of the of the mortgaged premises for the full amount of the debt and judgment, the debt is fully extinguished and the purchaser ceases to be a creditor or mortgagee."  *Id.*

MBank contends the decision in *Haskin* is distinguishable in "three important ways":  (1)

the issue in *Haskin* was not whether the insurance company should pay, but to whom; (2) the fire damage occurred after the foreclosure; and (3) the insurance contract involved a standard mortgage clause. (Pl.'s Mem. Summ. J. 10.)

Turning first to the insuring provision at issue in this case, the parties agree the Policy contained an "open" rather than a "standard" mortgage clause. Under an open mortgage clause the mortgagee is not a party to the contract, but only an appointee whose rights are dependent upon those of the insured. *Haskin*, 205 Or. at 148. In case of a loss while the mortgage is in full force, the mortgagee has a superior right to the proceeds of the policy *to the extent of the mortgage debt*. *Id.* (emphasis added). Conversely, a mortgagee who has purchased the property at a sheriff's sale is no longer entitled to the benefits of an insurance policy taken out by the mortgagor and containing a simple loss-payable clause. *Id*. at 149. Thus, an open mortgage clause does not create a new or independent contract between the insurance company and the mortgagee. Rather, the mortgagee is an appointee and may receive insurance proceeds only to the extent of its interests. *See, e.g., Transportation Equipment Rentals, Inc. v. Oregon Automobile Insurance Company,* 257 Or. 288, 294, 478 P.2d 620 (1970) (citing 5A Appleman, *Insurance Law and Practice*, 143-46 § 3335 (1970)). Simply put, the mortgagee has an interest in the policy only as security for the debt, and once the mortgaged premises is purchased for the full amount of the debt and judgment, the debt is fully extinguished and the purchaser ceases to be a creditor or mortgagee.

In accordance with this principal, the Ninth Circuit has consistently held that a full or partial extinguishment of mortgage debt precludes, to the extent thereof, any recovery on a loss by the loss payable mortgagee. Instead, a mortgagee's insurable interest under an insurance policy is limited to the amount of the debt. Once the debt has been fully extinguished by the full credit bid, so has

the insurable interest. *See, e.g., Universal Mortgage Co., Inc. v. Prudential Ins. Co.*, 799 F.2d 458, 460 (9th Cir. 1986); *Rosenbaum v. Funcannon,* 308 F.2d 680, 684 (9th Cir. 1962). This rule is equally applicable when the mortgagee takes a deed in lieu of foreclosure. *See Mann v. Glens Falls Ins. Co.*, 541 F.2d 819, 820 (9th Cir. 1976) ("when [plaintiff] chose to take a deed in lieu of foreclosure, the deed discharged . . . the mortgage debt entirely"). *See also Ins. Co. Of North America v. Citizens Ins. Co.*, 425 F.2d 1180, 1182 (7th Cir. 1970) (and cases cited therein).

Based on the Oregon Supreme Court's analysis in *Haskin*, 205 Or. 140, the court concludes Oregon courts would follow the clear majority of state and federal courts to find full satisfaction of the mortgage debt, either by way of a foreclosure sale or and estoppel deed in lieu of foreclosure, extinguishes any right of MBank's to demand further compensation related to the value of Lot 25, and bars recovery under the Policy. In this case, the Policy language is clear: State Farm "shall not be liable:  a.  to the **insured** for an amount greater than the insured's interest[.]"  (Stipulation Ex. A at 13 (emphasis in original).)  JTW and MBank understood, agreed and expressly stated that transfer of the Deed to MBank would extinguish JTW's obligation for the loan. The Agreement specifically states:  "Agreement is entered into in settlement of doubtful disputed claims." (Stipulation Ex. B ¶ 11.)  If further provides: "MBank . . . does hereby release, acquit, and forever discharge Walker, Inc. . . . from any and all claims, matters, liabilities or obligations of any kind or nature, known or unknown which may be asserted by MBank against Walker . . . arising under the Construction Loans, the Notes, the Trust Deeds, and the other loan documents and transaction(s) . . . .".  (Stipulation Ex. B ¶ 25.)  Finally, the Deed expressly states MBank waives its right to collect any deficiencies *for the debt*.  (Stipulation Ex. C at 2 (emphasis added).)  Thus, the Deed and Agreement were in lieu of foreclosure and the transfer constituted a complete satisfaction of JTW's

debt owed to MBank on the loan.

MBank's insurable interest extended only to the amount of the debt and it is entitled to only one satisfaction of that debt. The Deed provided to MBank pursuant to the Agreement constituted a total satisfaction of the mortgage debt and eliminated MBank's insurable interest. *See Rosenbaum*, 308 F.2d at 684 ("[I]t is well settled that full or partial extinguishment of the debt itself, whether prior to the loss . . . or subsequent to the loss . . . precludes to the extent thereof, any recovery by the loss-payable mortgagee for the plain and sole been to that extent extinguished." (quotations and citations omitted)). Once MBank took clear title to Lot 25 it was no longer a creditor against that property and it no longer had an insurable interest under the Policy.

MBank also argues the Deed was subsequently modified to provide: "This forebearance does not affect the responsibility of Grantor for the water damage to the property predating this Estoppel Deed." (Stipulation Ex. C at 2; Allen Decl. ¶ 7.) According to counsel for MBank, the modification was to "memorialize the acknowledgment of JTW and [MBank] of how they would have proceeded had either been aware of the water damage at the time they entered into the settlement agreement and recorded the Estoppel Deed with respect to Lot 25." (Allen Decl. ¶ 8.) It is undisputed, however, JTW was aware Lot 25 had suffered water damage prior to entering the Agreement and receiving the Deed. (Stipulation ¶ 6 ("On or about January 15, 2009, Lot 25 sustained water damage."); Ex. B at 9 ("Prior to the Settlement Agreement, J.T. Walker Construction, Inc.[,] had become aware of the water damage and had initiated repairs and its insurance claim.").) The fact MBank failed to investigate and confirm the full extent of the harm and resolve liability for that damage prior to executing its agreement with JTW is of no consequence to the court's analysis of the precise issue here. *See Universal Mortgage Co., Inc.*, 799 F.2d at 461

("Actual or constructive knowledge of property damage prior to a full credit bid is irrelevant because the full credit bid, once made, extinguishes the debt secured by the insurance policy.").

Although the court has reservations about allowing State Farm to avoid paying for a covered event under the Policy, MBank and JTW entered into an agreement that divested MBank of its right to recover under that Policy.[3] MBank could have avoided this outcome by delaying foreclosure on Lot 25, thereby retaining its insurable interest, until after State Farm paid for the covered water damage in accordance with the terms of the Policy. Instead, the plain and unambiguous language of the Agreement demonstrates that in exchange for, among others, the Deed to Lot 25, MBank discharged JTW for its obligations arising under the Construction Loans. Indeed, MBank agreed to forever and completely waive and release any and claims they may arising from the loan on Lot 25. If MBank was concerned it was receiving less than full satisfaction, it should have inspected the property prior to entering the Agreement and executing the Deed.

Finally, the explanation for State Farm's denial of the insurance claim was the full credit bid rule. Any subsequent conduct by MBank and JTW in modifying the original Agreement was an attempt to eviscerate State Farm's legitimate justification. MBank has provided no authority to allow it to escape the consequences of its Agreement and receipt of the Deed on the basis of mistake. Specifically, MBank cites no case law in support of its effort to modify the Agreement to materially alter the legal obligations of a third party who was neither in privity with the parties or consented to the modification. In this case, there was no mistake; the existence of the water damage was known at least to JTW. Rather the modification of the Agreement had a remedial purpose designed

---

[3]The court expresses no opinion whether State Farm bears any further obligation to JTW under the Policy.

12 – OPINION AND ORDER

to defeat State Farm's legitimate defense.  The court declines to enforce such a modification.  *See generally A&T Siding, Inc. V. Capitol Specialty Insurance Corp.*, No. 3:10-CV-980-AC, 2011 WL 3651777, * at 10 (D. Or. Aug. 18, 2011) ("[C]ourt will not enforce an agreement entered into by the parties the express intent of which is to circumvent the finality of a valid court order . . . that barred the claim now sought to be asserted.")  Nor does the subsequent modification change the fact that the loan debt secured by the property was fully discharged.  That JTW assumed the obligation for that harm does not create an insurable interest in Lot 25 for MBank such that it may recover under the Policy.

*Conclusion*

Based on the foregoing State Farm's Motion for Partial Summary Judgment (doc. #15) is GRANTED; and MBank's Motion for Partial Summary Judgment (doc. #19) is DENIED.

IT IS ORDERED

DATED this   13   day of December 2011

_____/s/John V. Acosta_____
John V. Acosta
United States Magistrate Judge

13 – OPINION AND ORDER